UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JAMIE WELCH, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 3:16-CV-1000 |
| | § | |
| ENERGY TRANSFER EQUITY, L.P. | § | JURY DEMAND |
| and LE GP, LLC, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFF'S AMENDED COMPLAINT

Plaintiff Jamie Welch ("Plaintiff" or "Mr. Welch") files this Amended Complaint against Defendants Energy Transfer Equity, L.P. and LE GP, LLC (together "Defendants" or "ETE"), and alleges as follows:

## INTRODUCTION

1. By this case, Mr. Welch seeks to recover the compensation and other consideration he became entitled to upon the termination of his employment by ETE without cause. Although ETE has asserted that Mr. Welch's termination was for cause, it has no basis for that assertion and, therefore, no basis for refusing to perform its contractual obligations to Mr. Welch.

## PARTIES

2. At the time of filing, Plaintiff Jamie Welch was a Texas resident.

3. At the time of filing, Defendant Energy Transfer Equity, L.P. was a Delaware limited partnership with its principal place of business and headquarters located in Dallas, Texas.

1

4.    At the time of filing, Defendant LE GP, LLC was the general partner of Energy Transfer Equity, L.P., and a Texas limited liability corporation with its principal place of business and headquarters located in Dallas, Texas.

## JURISDICTION AND VENUE

5.    On March 10, 2016, Plaintiff filed this case in the 191st Judicial District Court, Dallas County, Texas.  The state district court for Dallas County, Texas has subject-matter jurisdiction over this matter because it involves state law breach of contract claims and the amount in controversy exceeds the state court's minimum jurisdictional requirements.

6.    On April 12, 2016, Defendants removed the case to this Court based on the assertion that one claim in Plaintiff's Original Petition arose under the laws of the United States, specifically the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, et seq. ("ERISA").  As set forth in Plaintiff Jamie Welch's Motion to Remand and Brief in Support, filed contemporaneously herewith, this case, both as originally pled and as now pled in this Amended Complaint, does not assert claims under the laws of the United States, including any claims under ERISA.  Therefore, the case was not properly removed, and should be remanded.

7.    The state district court for Dallas County, Texas has personal jurisdiction over the Defendants because of their contacts with the State of Texas, which include, among other things, that they are headquartered in Dallas County, Texas and agreed to resolve all disputes with the Plaintiff in Dallas County, Texas.

8.    Venue is proper in Dallas County, Texas pursuant to Texas Civil Practice and Remedies Code § 15.002(a) because all of the events giving rise to the claim occurred in Dallas County, Defendants' principal office is in Dallas County, and Defendants agreed to resolve all disputes with the Plaintiff in Dallas County, Texas.

# FACTS

A.  **The Termination of Mr. Welch's Employment with ETE.**

8. In February 2016, after Mr. Welch ably served as ETE's Group Chief Financial Officer and Head of Corporate Development for almost three years, Mr. Kelcy Warren, Founder and Chairman of ETE, informed Mr. Welch that his employment would terminate on March 1, 2016.

9. In February 2016, Mr. Welch was assured several times by the ETE General Counsel that this termination would be without Cause, as that term is defined in agreements between Mr. Welch and ETE. To-date, ETE has provided Mr. Welch with no reasonable explanation for his termination. To the contrary, Mr. Welch believes that his termination was motivated by an agenda unrelated to Mr. Welch's performance.

B.  **ETE Breached Its Contractual Obligation to Deliver and Convert Mr. Welch's Class D Units upon Termination.**

10. Among other things, the purported termination of Mr. Welch's employment resulted in the immediate vesting of certain Class D units of ETE pursuant to a December 23, 2013, Class D Unit Agreement ("Agreement") between Mr. Welch and ETE. A true and correct copy of the Agreement is attached hereto as Exhibit A.

11. Pursuant to that Agreement, ETE issued to Mr. Welch 770,000 Class D units in ETE. Since December 2013, ETE has twice undertaken a unit split, increasing Mr. Welch's Class D units to 3.08 million units. Under the terms of the Agreement, 924,000 of these units vested and were converted to ETE common units ("Common Units") in March 2015. As to the remaining 2.156 million Class D units, the Agreement provides that, in the event of Mr. Welch's termination of employment without Cause, Mr. Welch's Class D Units shall fully vest and be converted into Common Units.

12. While the Agreement provides that the Class D units are subject to forfeiture on a termination for Cause, because there was no Cause for Mr. Welch's termination, the forfeiture provision is not applicable. ETE has failed to detail any conduct that constitutes Cause under the Agreement. To the contrary, at the time Mr. Welch was informed of the purported termination of his employment, ETE asked that he continue performing significant consulting services for the company for another 12 to 15 months at a remuneration level that was a fraction of his prior compensation. *See* a true and correct copy of the proposed Consulting Agreement received from ETE on February 6, 2016 attached hereto as Exhibit B; a true and correct copy of the excerpt from ETE's 8K issued on February 8, 2016 referencing the concept of "consulting" attached hereto as Exhibit C.

13. Because Mr. Welch's termination was without Cause, Mr. Welch's Class D units should have fully vested and been converted into Common Units upon his termination. In breach of the Agreement, ETE has refused to vest and convert the Class D units and has instead deemed Mr. Welch's interest in his Class D units as forfeited.

14. Further, ETE has refused to pay the most recent distribution on those Class D units, which was scheduled to be paid on February 19, 2016. That distribution was $614,460.

**C.    ETE Failed to Deliver Long Term Incentive Shares Awarded to Mr. Welch.**

15. In connection with his employment in April 2013, Mr. Welch and ETE executed an employment letter ("Employment Agreement") dated April 29, 2013, setting forth the general terms of Mr. Welch's employment. A true and correct copy of the Employment Agreement is attached hereto as Exhibit D. The Employment Agreement contemplated that Mr. Welch would be granted equity awards under various affiliated long term incentive plans ("LTIP"). As with

the Agreement, the Employment Agreement provided that any unvested equity awards would vest upon Mr. Welch's termination without Cause.

16. At the time Mr. Welch's ETE employment was terminated, he had been granted the following unvested LTIP equity interests: 63,845 ETP Units; 48,063 SXL Units; and 18,523 SUN Units. Upon Mr. Welch's termination without Cause, these interests vested. In breach of the Employment Agreement, ETE has failed and refused to deliver these vested interests to Mr. Welch and failed to deliver the distributions paid on such LTIP units on or about February 19, 2016.

**D.     ETE Failed to Pay Mr. Welch's Bonus for 2015.**

17. At the time ETE terminated Mr. Welch's employment, Mr. Welch had earned a significant bonus for the 2015 calendar year. His overall bonus amount would have been consistent with Tom Mason, who is his peer as the General Counsel of ETE and was on an equivalent salary and benefits level. Mr. Welch was terminated long after he had earned the 2015 bonus.

18. ETE refused to pay Mr. Welch his 2015 bonus unless he agreed to forego certain rights, including rights with respect to the timing of delivery of his Class D units. After Mr. Welch refused to give up these valuable rights, ETE informed Mr. Welch that the bonus would not be paid despite ETE's obligations to do so.

**E.     ETE Breached it Obligation to Grant to Mr. Welch an Interest in Lake Charles LNG Project.**

19. In April 2013, Mr. Warren agreed as part of the overall employment agreement that ETE would either sell or grant an interest in Lake Charles LNG to Mr. Welch. At that time, Lake Charles LNG, which was an existing natural gas import terminal in Lake Charles, Louisiana was to be converted to an export facility to capitalize on the tremendous amount of

natural gas supply in the U.S. that had been discovered in unconventional shale basins across the country. That natural gas would be converted to liquefied natural gas ("LNG") and transported in special tankers across the world. This project would be the largest single project ever undertaken by ETE. It was almost three times larger than any development project that the Energy Transfer family had ever undertaken. In total, the cost for Lake Charles LNG was estimated to be between $12 billion and $13 billion.

20. Mr. Welch had unique financing and capital raising expertise in the LNG industry. While at his former employer, Credit Suisse, Mr. Welch had been the principal architect in structuring and arranging all of the necessary financing for the first LNG export project (at Sabine Pass) undertaken on the U.S. Gulf Coast for a company called Cheniere Energy, Inc. That project was a watershed event for the overall U.S. oil and gas industry and, in large part, was the result of the work done by Mr. Welch. Following that success, Mr. Welch was retained to structure and raise the capital and financing necessary for the next LNG export project in the US for a private company called Freeport LNG. That project also successfully achieved completion of development and is now in construction.

21. Part of the appeal to Mr. Warren of hiring Mr. Welch was the breadth of Mr. Welch's unique experience and capabilities in the LNG industry as neither ETE nor ETP had any LNG expertise in-house. To Mr. Welch, the concept of having a direct interest in the ultimate possible success of Lake Charles LNG was a critical component of his compensation and his decision to join ETE. Mr. Warren indicated to Mr. Welch in April 2013 that he would agree to put in place this equity program and that he would probably use it as an additional retention tool for other senior executives. Mr. Warren stated that Mr. Welch would get 40% of any equity program that was implemented.

22. Mr. Warren asked that the Lake Charles LNG equity commitment not be included in the Employment Agreement because Mr. Warren needed Board approval and the LNG equity program would ultimately include other executives. Nevertheless, Mr. Warren repeatedly assured Mr. Welch that he would deliver on his commitment.

23. Thereafter, the structure of the equity grant was finalized and presented to the Board in the form of a traditional Long Term Incentive Plan (similar to LTIP plans that existed with ETP and other members of the Energy Transfer family). Ultimately, the ETE and ETP boards approved the overall Lake Charles LNG equity program in the form of a traditional Long Term Incentive Plan for 10% of the equity value of Lake Charles LNG (over a threshold value) and gave full, delegated authority to Mr. Warren to allocate the overall approved program.

24. During the time that the plan was developed and approved, Mr. Warren repeatedly affirmed to Mr. Welch that he was a "man of his word" and would grant Mr. Welch the interest Mr. Warren had promised (which would represent at least 40% of the allowed program). Under the actual Board-approved terms of the plan, Mr. Welch's interest would fully vest if he was terminated without Cause.

25. Mr. Welch relied on Mr. Warren's commitment and the belief that for all practical purposes he had a de facto grant under the Lake Charles incentive program in accepting employment and performing the ongoing role of quarterbacking the Lake Charles LNG project. Mr. Welch was the executive who led all of the development activities of Lake Charles LNG for ETE and ETP, working with others in the broader organization. Mr. Welch was responsible for every Board update at ETE and ETP on this project and presented the overview of Lake Charles LNG every year as part of the Energy Transfer Analyst Day attended by hundreds of research analysts and investors.

26. Mr. Welch structured the overall Lake Charles LNG project, negotiated the multitude of commercial contracts with BG (now part of Royal Dutch Shell), negotiated with BG the construction contracts with the various construction consortia, and structured the financing and capital raising requirements for the project (in a manner that did not put any undue pressure on the balance sheets of ETE or ETP).  At the time of Mr. Welch's termination, the project was close to being sanctioned and beginning construction. Recognizing the critical role Mr. Welch has played in this project over the last four years, ETE has asked Mr. Welch to continue to provide consulting services for Lake Charles LNG but without respecting its obligation to grant him his stake in the project.

27. Today, Lake Charles LNG has received all necessary approvals from the Federal Energy Regulatory Commission and the U.S. Department of Energy, it has signed a Project Development Agreement and negotiated all of the relevant commercial agreements with BG, ETE/ETP's joint venture partner, and it is deciding between two world-class construction consortia to build the project.  Mr. Welch has been the driving force largely responsible for bringing the project to this point.

28. Under the terms of Mr. Warren's commitment, Mr. Welch should already have been awarded his interest in the project, and now, based on his without Cause termination, that grant would have fully vested.  Despite its commitment to Mr. Welch, ETE refuses to grant to Mr. Welch the Lake Charles LNG interest.

### COUNT 1 – BREACH OF CONTRACT
**(Agreement)**

30. The Agreement is a valid, enforceable contract.

31. Plaintiff has fully performed his obligations under the Agreement, and all conditions precedent to Defendants' performance have been satisfied.

32. Defendants have breached the Agreement by failing to deliver and convert Plaintiff's Class D Units to ETE Common Units and by forfeiting Plaintiff's Class D Units, thereby causing Plaintiff injury.

33. Plaintiff therefore seeks specific performance of ETE's obligation to deliver Plaintiff's Class D Units and convert them to Common Units.

34. Plaintiff is entitled to recover reasonable and necessary attorneys' fees under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of contract. Plaintiff retained counsel who presented Plaintiff's claim to Defendants.

### COUNT 2 – BREACH OF CONTRACT
### (Employment Agreement)

35. The Employment Agreement is a valid, enforceable contract.

36. Plaintiff has fully performed his obligations under the Employment Agreement, and all conditions precedent to Defendants' performance have been satisfied.

37. Defendants have breached the Employment Agreement by failing to deliver Plaintiff's LTIP units in ETP, SXL, and SUN and Plaintiff's 2015 bonus payment, thereby causing Plaintiff injury.

38. Plaintiff therefore seeks specific performance of ETE's obligation to deliver Plaintiff's LTIP units in ETP, SXL, and SUN and an award of damages within the jurisdictional limits of this Court.

39. Plaintiff is entitled to recover reasonable and necessary attorneys' fees under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of contract. Plaintiff retained counsel who presented Plaintiff's claim to Defendants.

## COUNT 3 – BREACH OF CONTRACT
### (Agreement Regarding Lake Charles LNG)

40. Plaintiff had a valid and enforceable contract with ETE for the acquisition or grant of an interest in Lake Charles LNG.

41. All conditions precedent to Defendants' performance have been satisfied. Although Plaintiff has at all times been ready, willing and able to perform, Defendants have failed and refused to convey the interest to Plaintiff in accordance with the parties' contract.

42. Defendants' breach caused injury to Plaintiff, resulting in the loss of the benefit of his bargain—an equity interest in Lake Charles LNG.

43. Plaintiff therefore seeks specific performance of ETE's obligation to deliver to Plaintiff an equity interest in Lake Charles LNG and/or an award of damages within the jurisdictional limits of this Court.

44. Plaintiff is entitled to recover reasonable and necessary attorneys' fees under Texas Civil Practice & Remedies Code chapter 38 because this is a suit for breach of contract. Plaintiff retained counsel who presented Plaintiff's claim to Defendants.

## COUNT 4 – QUANTUM MERUIT

45. Defendants accepted valuable services from Plaintiff in the form of Mr. Welch's service as ETE's Group Chief Financial Officer and Head of Business Development during 2015.

46. ETE had reasonable notice that Mr. Welch expected compensation for those services when Plaintiff fully performed his duties as ETE's Group Chief Financial Officer and Head of Corporate Development in 2015.

47. Plaintiff has not received just compensation for the services, including his 2015 bonus award. Plaintiff therefore seeks damages within the jurisdictional limits of this Court.

## PRAYER

For these reasons, Plaintiff asks that the Court enter a judgment awarding Plaintiff the following:

    a.  Specific performance;

    b.  Actual damages;

    c.  Pre-judgment and post-judgment interest;

    d.  Court costs;

    e.  Attorneys' fees; and

    f.  All other relief to which Plaintiff is entitled.

Respectfully submitted,

*[signature]*

_____
Pete Marketos
pete.marketos@rgmfirm.com
State Bar No. 24013101
Katie Dolan-Galaviz
katie.galaviz@rgmfirm.com
State Bar No. 24069620
REESE GORDON MARKETOS LLP
750 N. Saint Paul Street, Ste. 610
Dallas, Texas 7520
(214) 382-9810 (Telephone)
(214) 501-0731 (Facsimile)

Jeffrey M. Tillotson, P.C.
Texas Bar No. 20039200
jtillotson@tillotsonlaw.com
TILLOTSON LAW
750 N. St. Paul Street, Suite 610
Dallas, Texas 75201
(214) 382-3041 Telephone
(214) 501-0731 Facsimile

Karl Stern
Texas Bar No. 19175665
QUINN EMANUEL URQUHART & SULLIVAN, LLP
711 Louisiana St., Suite 500
Houston, TX 77002
Tel: (713) 221-7000
Fax: (713) 221-7200
karlstern@quinnemanuel.com

**ATTORNEYS FOR PLAINTIFF JAMIE WELCH**

## CERTIFICATE OF SERVICE

   I certify that on April 29, 2016, I electronically filed the foregoing document with the Clerk of the Court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the Court. Counsel of record are being served with a copy of this document *via* the Court's electronic case filing system.

_____
PETE MARKETOS