# Exhibit B

## CONSULTING AGREEMENT

**THIS CONSULTING AGREEMENT** (this "Agreement") is effective the 1st day of March, 2016 (the "Effective Date"), by and between Energy Transfer Equity, L.P., a Delaware master limited partnership (the "Partnership"), and Jamie Welch ("Consultant"). Partnership and Consultant may be referred to individually as a "Party" or collectively as the "Parties".

### WITNESSETH:

**WHEREAS**, both the Partnership and the Consultant have mutually agreed to terminate the Consultant's employment with the Partnership as of March 1, 2016 provided that Consultant, among other things, enters into and satisfies the conditions of (i) this Agreement; (ii) the Separation and Restrictive Covenant Agreement and Full Release of Claims of even date herewith (the "Separation Agreement"); and (iii) the Class D Unit Agreement, as amended dated as of December 23, 2013 (the "Class D Agreement"); and

**WHEREAS**, the Consultant will provide consulting services described in Section III below with respect to, among other things, matter related to the completion of the merger with The Williams Companies, Inc. (the "WMB Merger"), financing the LNG export project involving the of the Lake Charles LNG Company, LLC and Lake Charles LNG Export, LLC, including debt financing and a potential initial public offering of equity interests ("collectively "LNG Matters"), communications and presentations to ratings agencies related to the WMB Merger, LNG Matters and other related or requested matters, and general financing (debt and equity) matters for the Partnership and its affiliates.

**NOW, THEREFORE**, in consideration of the premises and of the mutual promises and covenants set forth herein, the receipt and sufficiency of which is hereby acknowledged, the parties, intending to be legally bound hereby, agree as follows:

**I.     Term of Consultant; Termination**. The Partnership hereby engages Consultant, and Consultant hereby accepts engagement, as a consultant on the terms and subject to the conditions of this Agreement. The term of this Agreement shall commence on the Effective Date and shall continue for a period of one (1) year thereafter (the "Initial Term"). The Partnership upon written notification may extend the Agreement for an additional ninety (90) days after the Initial Term ("Extended Term"). The Agreement may be terminated (i) by the Partnership at any time upon thirty (30) days written notice to the Consultant; (ii) by mutual written agreement of the parties; and (iii) by either party if the other breaches any material provision of this Agreement . The Agreement may be immediately terminated by the Partnership for cause if:;

(a).    Consultant's services and execution of duties hereunder are deemed in the sole and reasonable opinion of the Partnership to be deficient or lacking as compared to the standard provided hereunder;

(b).    Consultant is in breach of the covenants and restrictions of the Separation Agreement or the Class D Agreement;

(c) Consultant makes any unauthorized communication or provides any unauthorized information to any person who is not an officer, director or employee of the Partnership or one its affiliates, including but not limited to, any rating agency, bank, debt holder, media, partner, unitholder, shareholder, prospective lender or investor and/or legal or regulatory body;

(d). Consultant makes any intentional misrepresentation concerning (i) his services/duties or consulting role hereunder; or (ii) the Partnership or any of its respective affiliates, subsidiaries, directors, officers or employees; or

(e). Consultant violates any applicable laws, rules or regulations while performing his services/duties under this Agreement.

In the event of a termination prior to the end of the full term of this Agreement, Consultant would be compensated through the effective date of termination under this section and not for the full term.

## II. Payment for Execution of Services/Duties

(a). **Compensation**. As compensation for the services/duties to be rendered by Consultant hereunder, the Partnership agrees to pay Consultant an amount equal to $250,000.00 for the Initial Term of the Agreement, such amount to be paid monthly ($20,833.33), in arrears commencing April 1, 2016 during the Initial Term. In the event the Partnerships engages the Consultant for the Extended Term that monthly rate shall remain the same for each month of the Extended Term.

(b). **Reimbursement of Expenses**. The Partnership, upon the approval of the Partnership's Secretary, shall reimburse Consultant for pre-approved, reasonable and appropriate out-of-pocket expenses, including travel, advanced or expended by Consultant or incurred by him for or on behalf of the Partnership in connection with his services/duties hereunder in accordance with the then-current policies of the Partnership upon presentation of appropriate documentation or receipts as the Partnership may from time to time require. Notwithstanding the forgoing, the Partnership shall limit reimbursement for cellular and data communication services to $300.00 per month.

**III. Services/Duties**. Consultant shall report to the Chief Executive Officer of the Partnership's general partner or his designee(s). Consultant shall have such duties and obligations as may be reasonably and expressly requested by the Chief Executive Officer or his designee(s) from time to time, including providing consulting services with respect to, among other things, (i) related to the WMB Merger; (ii) LNG Matters; (iii) communications and presentations to the ratings agencies on the WMB Merger, LNG Matters and other related or requested matters; and (iv) general financing (debt and equity) matters for the Partnership and its affiliates. Each request for duties of the Consultant hereunder shall be communicated in writing to Consultant. In addition, Consultant agrees to be available to assist as reasonably and expressly requested with respect to legal proceedings and disputes, litigation and/or governmental proceedings (collectively the "Legal Proceedings"), including attendance at preparatory meetings, depositions and mediations related thereto and cooperation with legal counsel, for any matters arising from the WMB Merger or any LNG Matter and this availability and assistance with respect to the Legal Proceedings

arising from the WMB Merger and LNG Matters shall survive the term of this Agreement and Section 11 of the Separation Agreement.

Consultant agrees to perform his duties and responsibilities in a diligent, careful, prompt and proper manner and to be available to devote as much of his business time and efforts as are necessary to satisfy his duties and obligations to the interests of the Partnership and/or its affiliates hereunder. Consultant shall diligently and conscientiously devote his time and effort consistent with the terms of this Agreement, applicable law, and the general performance guidelines established by the Partnership. Consultant is not party to any other agreement, or under any other duty, which will interfere or conflict with his full compliance with this Agreement. Consultant will not enter into any agreement or undertake any other duty, whether written or oral, in conflict with the provisions of this Agreement.

Additionally, Consultant agrees and acknowledges that he shall be fully subject to the restrictive covenants and other restrictions, expressly including those in Sections 5, 6, 8 and 9 provided for under his Separation Agreement and nothing herein is intended to in any way modify, or reduce the scope or duration of such restrictive covenants. In the performance of his duties, Consultant shall comply with the policies of the Partnership, as in effect from time to time. To the extent the Partnership's requests for Consultant's services conflict with other personal or professional obligations of Consultant, the Partnership agrees to make reasonable efforts to schedule around such obligations.

**IV.** **Obligations Regarding Confidential Information.** As provided for above, Consultant, expressly acknowledges the restrictive covenants in his Separation Agreement, including under Section 5 thereof. Consultant further agrees Partnership will continue to give Consultant access to and provide Consultant with Confidential Information of the Partnership, and its respective affiliates and subsidiaries. The term "Confidential Information" shall have the meaning ascribed to such term in the Separation Agreement. Consultant acknowledges and agrees that such Confidential Information has been developed at great expense and is of great value and that maintaining the confidentiality of all such Confidential Information is critically important to the Partnership. Consultant further acknowledges and agrees that the Confidential Information is continually evolving and changing and that some or all such Confidential Information will be needed by Consultant and provided by the Partnership for the first time in the course of Consultant's consulting relationship with the Partnership. Therefore, Consultant agrees as follows:

Consultant agrees to keep confidential any and all Confidential Information. Consultant agrees that he will not, at any time, both during and after the term of his consulting relationship, communicate or disclose to any person or entity (other than the Partnership), or use for his own benefit or the benefit of any person or entity other than the Partnership, any Confidential Information acquired by Consultant. Consultant agrees that he will not remove from the Partnership's premises, reproduce or otherwise copy, or summarize any Confidential Information, except as required in order for Consultant to perform his job duties.

**V.** **INDEPENDENT CONTRACTOR STATUS**

(a). **Independent Contractor Status and Purpose**. Consultant shall perform his services/duties hereunder as an independent contractor and not as an agent, employee or joint venture of the Partnership. Except as provided for in Consultant's Separation Agreement,

3

Consultant shall not be entitled to participate in or receive benefits under any of the Partnership's programs maintained for its employees, including without limitation, life, medical and disability benefits, pension, profit sharing or other retirement plans or other fringe benefits. Except as expressly contemplated by this Agreement and only insofar as specifically required hereunder, the Consultant shall not have any authority to represent, bind or act on behalf of the Partnership in any way.

    **(b).**   **Provision of Facilities and Equipment**. The Partnership shall provide Consultant with (i) any necessary equipment (including computers, tablets, printers and equipment), office supplies, materials and (ii) appropriate assistance from other persons, including administrative assistance needed for the performance of his services under this Agreement.

## VI.   CONSULTANT OBLIGATIONS

    **(a).**   **Indemnification**. Each Party shall indemnify, defend and hold harmless the other Party (in the case of the Partnership, including, its affiliates, its subsidiaries, its employees and directors) from any and all claims, causes of action, losses, costs, injuries or deaths, liabilities, damages and any and all other expenses, including without limitation, reasonable attorney's fees, incurred by or arising from the gross negligence, willful misconduct or violations of law on the part of or by any Party in their performance of under this Agreement or resulting from breach of this Agreement by any Party. The indemnification obligation shall continue through the Term of this Agreement, and shall continue subsequent to the termination of this Agreement for actions arising from events occurring during the Term of this Agreement.

    **(b).**   **Taxes**. For any payments received by Consultant under this Agreement, Consultant acknowledges that he is responsible for all applicable city, state, federal and other taxes as required pursuant to any law or governmental regulation or ruling. Consultant acknowledges that Partnership is not withholding any taxes from the payments made to Consultant under this Agreement. Partnership shall report all compensation paid to Consultant hereunder on an IRS Form 1099.

## VII.   MISCELLANEOUS

    **(a).**   **Applicable Law, Jurisdiction and Mandatory Forum**. This Agreement is entered into under, and shall be governed for all purposes by, the laws of the State of Texas without regard for any conflicts of law provisions thereunder. Subject to the terms of this section VII, any suit by either party to enforce any right hereunder or to obtain a declaration of any right or obligation hereunder must be brought in any state or federal court of competent jurisdiction in Dallas County, Texas. Consultant hereby expressly consents to the jurisdiction of the foregoing courts for such purposes.

    **(b).**   **Successors/Assignment.** Consultant acknowledges and agrees that this Agreement shall be binding upon and inure to the benefit of Partnership, its affiliates and subsidiaries or entity which may hereafter acquire or succeed Partnership to all or substantially by any means whether direct or indirect, by purchase, merger, consolidation, or otherwise.

    **(c).** **Notices.** For purposes of this Agreement, notices and all other communications provided for herein shall be in writing and shall be deemed to have been duly given when personally delivered or when mailed by any means which provides a receipt upon delivery and addressed as follows:

    If to the Partnership:

        Mr. Christopher Curia
        EVP & Chief Human Resources Officer
        Energy Transfer Equity, L.P.
        8111 Westchester Drive
        Dallas, Texas 75225

    If to Consultant:

    Mr. Jamie Welch

    _____
    _____

    With a copy to:

    _____
    _____
    _____

or to such other address as either party may furnish to the other in writing in accordance herewith, except that notices of changes of address shall be effective only upon receipt.

    **(d).** **No Waiver.** No failure by either party hereto at any time to give notice of any breach by the other party of, or to require compliance with, any condition or provision of this Agreement shall (i) be deemed a waiver of similar or dissimilar provisions or conditions at the same or at any prior or subsequent time, or (ii) preclude insistence upon strict compliance in the future.

    **(e).** **Severability.** If a court of competent jurisdiction determines that any provision of this Agreement is invalid or unenforceable, then the invalidity or unenforceability of that provision shall not affect the validity or enforceability of any other provision of this Agreement, and all other provisions shall remain in full force and effect.

    **(f).** **Counterparts.** This Agreement may be executed in one or more counterparts, each of which shall be deemed to be an original, but all of which together will constitute one and the same Agreement.

    **(g).** **Headings.** The section headings have been inserted for purposes of convenience and shall not be used for interpretive purposes.

**(h).** **Affiliate**. As used in this Agreement, "affiliate" shall mean any person or entity which directly or indirectly through one or more intermediaries owns or controls, is owned or controlled by, or is under common ownership or control with Partnership.

**(i).** **Termination**. Except as otherwise provided in this Agreement, termination of this Agreement pursuant to the provisions of Section I hereof shall not affect any right or obligation of either party hereto which is accrued or vested (i) under Consultant's Separation Agreement; or (ii) prior to or upon such termination or the rights and obligations set forth in Sections IV and VI hereof.

**(j).** **Entire Agreement**. This Agreement constitutes the entire agreement of the parties with regard to the provision of duties/services of the Consultant hereunder, and contains all the covenants, promises, representations, warranties and agreements between the parties with respect to the engagement of Consultant for purposes of this Agreement. Each party to this Agreement acknowledges that no representation, inducement, promise or agreement, oral or written, has been made by either party, or by anyone acting on behalf of either party, which is not embodied herein, and that no agreement, statement, or promise relating to the engagement of Consultant by Partnership, which is not contained in this Agreement, shall be valid or binding, except as provided for under the Separation Agreement. Any modification of this Agreement will be effective only if it is in writing and signed by the party to be charged.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the Effective Date.

**ENERGY TRANSFER EQUITY, L.P.**

By: LE GP, LLC, its general partner

By: _____
    Christopher R. Curia
    EVP & Chief Human Resources Officer

**CONSULTANT:**

By: _____
    Jamie Welch